IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

PATRICK E. WEST,

                Petitioner,

vs.

DONALD UHLER, Superintendent,
Upstate Correctional Facility,[1]

              Respondent.

No. 9:12-cv-01611-JKS

MEMORANDUM DECISION

Patrick E. West, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254. West is in the custody of the New York

State Department of Corrections and Community Supervision and is incarcerated at Upstate

Correctional Facility. Respondent has answered, and West has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On the evening of December 31, 2008, West attended a family party and then went to a

bar afterwards, and consumed several alcoholic drinks and possibly prescription drugs over the

course of the evening. As West was walking home, James Adams bumped into him. West

punched Adams in the head and then stomped on Adams's head after Adams fell to the ground.

West was arrested on January 1, 2009, and initially charged with second-degree assault and

seventh-degree criminal possession of a controlled substance. West claimed he acted in self-

defense. Adams died the following day of acute brain injuries due to blunt force trauma to the

---

[1]      Donald Uhler, Superintendent, Upstate Correctional Facility, is substituted for
David A. Rock, former Superintendent, Upstate Correctional Facility. FED. R. CIV. P. 25(d).

head, and West was subsequently indicted by a grand jury for first- and second-degree manslaughter.  A jury convicted West of first-degree manslaughter.  The court sentenced West to 21 years' imprisonment followed by 5 years of post-release supervision, and ordered him to pay restitution in the amount of $36,293.13.

West directly appealed through counsel, arguing that: 1) the trial court erroneously allowed the prosecution to designate one of its own witnesses, Robin Stevens, "hostile," thereby improperly allowing the prosecution to cross-examine and impeach Stevens in violation of West's right to confrontation; 2) the trial court erroneously allowed the prosecution to use Stevens's out-of-court statements to impeach Stevens and substitute for his testimony in violation of West's right to confrontation; 3) the trial court failed to give sufficient limiting or curative instructions regarding Stevens's testimony; 4) objections to the above-mentioned errors were properly preserved for appeal; and 5) the above-mentioned errors could not be deemed harmless because the evidence against West was not overwhelming.

The Appellate Division unanimously affirmed West's judgment of conviction in a reasoned opinion.  *People v. West*, 925 N.Y.S.2d 272, 273 (N.Y. App. Div. 2011).  The appellate court held that, "[g]iven Stevens' repeated refusals at trial to answer any questions concerning the written statement he provided to police regarding certain admissions allegedly made by [West] while in jail, County Court properly exercised its discretion in declaring Stevens to be a hostile witness and permitting the use of leading questions by the People."  *Id*. at 272.  The court further found that West had failed to preserve for review his claims that the prosecution was improperly permitted to impeach Stevens with his prior out-of-court statements in violation of New York Criminal Procedure Law ("CPL") § 60.35 and his right to confrontation and that the

trial court failed to adequately instruct the jury regarding the limited purpose for which such statements could be considered.  *Id*. at 272-73.  In the alternative, the court concluded that the trial court provided prompt and appropriate limiting instructions and that the use of Stevens's prior statements for impeachment purposes, although improper, was harmless in light of the overwhelming evidence of West's guilt.  *Id*. at 273.

West filed a counseled application for leave to appeal to the Court of Appeals.  West argued that the Appellate Division erred in concluding that the trial court properly exercised its discretion in declaring Stevens a hostile witness and in finding that the People's improper impeachment of Stevens was unpreserved and harmless.  The Court of Appeals denied leave to appeal without comment.  *People v. West*, 957 N.E.2d 1164, 1164 (N.Y. 2011).

West then filed a *pro se* motion to vacate the judgment pursuant to CPL § 440.10.  West argued that trial counsel was ineffective for failing to "state factual allegations inside of his omnibus motion to secure the suppression" of his inculpatory statements to the police and for otherwise moving to suppress those statements.  The trial court denied relief without a hearing, noting that West had not raised an ineffective assistance of counsel claim on direct appeal despite the fact that his appellate counsel was different from his trial counsel.  The court alternatively held that, viewing the record as a whole, trial counsel provided West meaningful and effective assistance of counsel.  West sought leave to appeal from the trial court's denial of his motion, arguing that the trial court erred in denying his motion without a hearing.  The Appellate Division denied relief without comment.  West then filed for leave to appeal to the Court of Appeals.  The Court of Appeals dismissed the application for leave to appeal, concluding that the order sought to appeal from was not appealable.

West then filed a *pro se* petition for writ of error coram nobis, arguing that his appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor committed misconduct where he "became an unsworn witness for the prosecution and placed his own veracity as an issue before the jury and also vouched for . . . his witness," and for failing to argue that his sentence was harsh and excessive. The Appellate Division unanimously denied West relief without comment. West then applied for leave to appeal, which the Court of Appeals denied.

West timely filed his *pro se* Petition with this Court on October 25, 2012.

## II. GROUNDS RAISED

In his Petition to this Court, West argues that: 1) the trial court violated CPL §§ 440.30(5) & (7) in denying his motion to vacate the judgment by failing to hold an evidentiary hearing "to develop the facts missing on the record in finding[s] of facts, conclusions of law and reasons for its determination"; 2) trial counsel was ineffective for failing to secure the suppression of his inculpatory statements to the police; and 3) appellate counsel was ineffective for failing to argue on direct appeal that a) the prosecutor committed misconduct in summation, b) his sentence was harsh and excessive, and c) the trial court erred in concluding that Stevens was a hostile witness.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule

that contradicts the governing law set forth" in controlling Supreme Court authority or "if the

state court confronts a set of facts that are materially indistinguishable from a decision" of the

Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362,

406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v.*

*Lett*, 559 U.S. 766, 777-78 (2010). The holding must also be intended to be binding upon the

states; that is, the decision must be based upon constitutional grounds and not on the supervisory

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus,

where holdings of the Supreme Court regarding the issue presented on habeas review are

lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established

Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted). In applying these

standards in habeas review, this Court reviews this "last reasoned decision" by the state court.

*Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir.

2000). Under AEDPA, the state court's findings of fact are presumed to be correct unless the

petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see*

*also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

# IV. DISCUSSION

## A. Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Respondent is correct in asserting that West failed to exhaust, such as through a petition for writ of error coram nobis, his claim that appellate counsel was ineffective for failing to raise on direct appeal the argument that the trial court erred in permitting Stevens to be treated as a hostile witness.

Exhaustion of state remedies also requires a petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). Respondent correctly contends that West failed to exhaust his claim that the trial court violated CPL §§ 440.30(5) & (7) by denying his motion to vacate his sentence without holding an evidentiary hearing because he raised it on state-law grounds only.

[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also See Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986), *superceded by statute on other grounds*, *United States v. Gonzalez-Largo*, No. 2:07-cr-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). West does not claim that cause exists for his procedural default. Because West already appealed the denial of his CPL § 440 motion, he may not now return to state court to raise any federal aspect of his claim that the trial court denied his motion without a hearing, and this claim may accordingly be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Attorney Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

West's unexhausted ineffective assistance of appellate counsel claim is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005); *Turner v. Sabourin*, 217 F.R.D. 136, 147 (E.D.N.Y. 2003). West may therefore still exhaust this claim in state court. This Court could stay the Petition and allow West to return to state court to satisfy the exhaustion requirement as to this remaining claim. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). However, West has not requested that this Court stay and hold his petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed

petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  In his Petition, West provides no reason why he did not seek relief on this claim through an additional coram nobis application to the state court. Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds and will instead reach the merits of all of his claims, as discussed below.

B. Merits

West argues that he was denied effective assistance of counsel by both his trial and appellate counsel.

a. *Strickland* and New York Standards on habeas review

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, West must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the

petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People*

*v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

  b. Trial counsel's failure to set forth the factual basis for suppression in the omnibus motion and secure the suppression of his initial statements to the police

  West asserts that he "was denied meaningful and []effective representation by counsel's failure to state factual allegations inside of his omnibus motion to secure the suppression of [his] induced, provoked statements" to the police and counsel's failure to secure the suppression of those statements.  The § 440 court denied relief, concluding that West failed to raise the claim on direct appeal despite the fact that he was represented by different counsel on appeal, and that in any event, trial counsel provided meaningful representation.

  As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim," even if, as here, the state court also rejected the claim on its merits.  *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).  In finding this claim unpreserved for appellate review, the trial court relied upon CPL § 440.10(2)(c), which requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record upon which to base such an appeal.  The purpose of the rule set forth in CPL § 440.10(2)(c) "is to prevent CPL 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so."  *People v.*

*Cooks,* 491 N.E.2d 676, 678 (N.Y. 1986) (citations omitted). New York courts have held that some ineffective assistance claims are "not demonstrable on the main record" and are more appropriate for collateral or post-conviction attack, through which the necessary evidentiary record can be developed. *People v. Harris,* 491 N.Y.S.2d 678, 687 (N.Y. App. Div. 1985) (collecting cases); *see also People v. Brown,* 382 N.E.2d 1149, 1149-50 (N.Y. 1978).

Here, however, West's claim is based on the omnibus motion and the transcripts of the suppression hearing, which are part of the trial record and thus would have provided a sufficient basis to attack trial counsel's effectiveness on direct appeal. Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's ineffective assistance of counsel claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006). Because West has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court. *Sweet*, 353 F.3d at 141.

In any event, the § 440 court's alternative conclusion that West's trial counsel provided meaningful representation was not unreasonable or contrary to federal law. In the omnibus motion, defense counsel moved for the suppression of West's statements made to Sergenat Troyer and Sergeant Strangeway on the grounds that his statements were "elicited by coercion and the force of excessive police authority." Defense counsel moved in the alternative for a

*Huntley* hearing.[2] The omnibus motion correctly noted that "[West] is not required to make any other specific factual allegations [in the motion] as to the involuntariness of his statements" to the police. CPL §§ 710.20(3), 710.60(3)(b)[3]; *see People v. Jones*, 746 N.E.2d 1053, 1056 n.2 (N.Y. 2001) ("Sworn allegations of fact are not required in motions for suppression of either involuntarily made statements or identification testimony resulting from improper procedures." (citations omitted)); *People v. Huntley*, 687 N.Y.S.2d 747, 749-50 (N.Y. App. Div. 1999). Thus, West's claim that his counsel was ineffective for failing to set forth the factual basis for his suppression claim in the omnibus motion is without merit, as under New York law, a factual basis for the claim was not required.

West's claim that counsel was ineffective for failing to successfully secure the suppression of his statements to Sergeant Strangeway and Sergeant Troyer is also without merit. At the *Huntley* hearing, defense counsel skillfully cross-examined Sergeant Cute, who took an initial statement from West, Officer Barber, who also initially responded to the scene, Officer Abbott, who transported West to the station, Sergeant Strangeway, who was called to the scene by Officer Cute, and Sergeant Troyer, who arrived at the scene after being notified of the incident by Sergeant Strangeway and who interviewed West at the station. Defense counsel

---

[2]    *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

[3]    CPL § 710.20(3) provides that a court may suppress evidence on the ground that it "[c]onsists of a record or potential testimony reciting or describing a statement of such defendant involuntarily made." CPL § 710.60(3)(b) provides that "[t]he court may summarily deny the motion if . . . [t]he sworn allegations of fact do not as a matter of law support the ground alleged; *except that this paragraph does not apply where the motion is based upon the ground specified in subdivision three or six of section 710.20.*" (Emphasis added).

elicited from Officer Barber, Officer Abbott, and Sergeant Strangeway that West was intoxicated at the time he made his initial inculpatory statements to Sergeant Cute. Defense counsel was also able to elicit from Sergeant Troyer that he did not feel comfortable questioning West after he was transported to the station because West's condition had deteriorated and he was "incoherent," had trouble walking, and kept falling asleep. According to Sergeant Troyer, it would have been "improper" to take his statement at that time. West was sent to the hospital for treatment and when he returned to the station, he was no longer incoherent. Sergeant Troyer proceeded to take a statement from him at that time, but testified that he did not know what had happened at the hospital or if West had gotten any sleep. Defense counsel was also able to elicit that Sergeant Troyer failed to completely fill out the form indicating that he advised West of his *Miranda* rights. Viewing the transcripts of the suppression hearing as a whole, defense counsel vigorously cross-examined the People's witnesses and effectively called into question the circumstances under which the police took several statements from West, highlighting in particular West's intoxicated state. The Sixth Amendment does not require more. Although the court ultimately denied West's motion to suppress his inculpatory statements to the police, there was nothing deficient about defense counsel's performance either in moving or arguing for the suppression of those statements. The state court did not unreasonably determine that counsel provided West meaningful representation.

Construing West's claim liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), he appears to argue that, in denying his CPL § 440 motion, the trial court violated CPL §§

440.30(5) & (7) by failing to hold an evidentiary hearing or "to develop the facts missing on the record in finding[s] of fact, conclusions of law and reasons for its determination."[4]

As discussed *supra*, West failed to exhaust this claim because he raised it on state-law grounds only. Moreover, West's claim is not cognizable on federal habeas review. The United States Supreme Court has recognized that the Constitution does not compel states to provide post-conviction proceedings for relief. *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 402-03 (2001) (citing cases). Accordingly, federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. *See Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011) (per curiam) ("[A]lleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief.").

West's claim might also be construed as a request for an evidentiary hearing in this Court. "A district court has broad discretion to hear further evidence in habeas cases." *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting

---

[4]     CPL § 440.30(5) provides in pertinent part that "[i]f the court does not determine the [CPL § 440.10] motion pursuant to [CPL § 440.30] subdivisions two, three or four, it must conduct a hearing and make findings of fact essential to the determination thereof." CPL § 440.30(7) provides that "[r]egardless of whether a hearing was conducted, the court, upon determining the motion, must set forth on the record its findings of fact, its conclusions of law and the reasons for its determination."

*Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

West fails, however, to specify what evidence he wishes to present. He states only that an "[e]videntiary hearing is required to develop the facts missing on the record [for the § 440 court's] determination[s]." A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963), *overruled in part on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *superceded in part by statute*, 28 U.S.C. § 2254(e)(2) (1996). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding

procedure employed by the state court was not adequate to afford a full and fair hearing; (4)

there is a substantial allegation of newly discovered evidence; (5) the material facts were not

adequately developed at the state-court hearing; or (6) for any reason it appears that the state

trier of fact did not afford the habeas applicant a full and fair fact hearing. 372 U.S. at 313.

As discussed above, West has failed to assert a colorable claim for relief as to either of

his ineffective assistance of trial counsel claims. Because he does not cite to new laws or

underlying facts that were not developed on the record before the state courts, he also has failed

to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Accordingly, he is not entitled to an

evidentiary hearing in this Court.

c. Appellate counsel's failure to argue prosecutorial misconduct

West next argues, as he did in his coram nobis petition, that his appellate counsel was

ineffective for failing to argue on direct appeal that the prosecutor committed misconduct in

summation when he "became an[] unsworn witness for the prosecution and placed his own

veracity as an issue before the jury, [and] also vouched for his witness." The Appellate Division

unanimously denied West relief without comment.

In its case-in-chief, the prosecution called Robin Stevens to testify regarding certain

inculpatory statements West had made to Stevens in jail on the night West was arrested. Stevens

testified about his own criminal history, that he knew both West and Adams, and that West was

housed next to him in jail on January 1, 2009, when West was arrested. Stevens admitted that he

had given a statement to the police and testified in the grand jury, but declined to identify West

at trial or answer questions about the content of his police statement and grand jury testimony.

Stevens did not initially invoke the Fifth Amendment, instead stating that he was not worried

about incriminating himself.  Rather, he asserted that the incident was "[j]ust none of [his] business," and that "[k]arma is a very bad thing."  When the prosecution then asked if his statement to Sergeant Troyer was true, Stevens stated that he would "plead the fifth on that one." The prosecution then moved to treat Stevens as a hostile witness.  Over defense counsel's objections, the court granted the prosecution's request and allowed the prosecution to ask Stevens leading questions.

The prosecutor then asked Stevens two leading questions regarding the content of his statement to the police about what West had confessed to him, but Stevens refused to answer. He initially stated that he did not "want to answer," but then stated "I plead the Fifth."  Defense counsel objected on the grounds that the prosecutor was "in effect testifying," but the court overruled that objection on the ground that the counsel's questions "can't be considered as evidence by the jury and have to be disregarded as evidence by the jury as is part of my standard instructions."  The prosecutor then asked Stevens several additional leading questions regarding the content of his police statement, and Stevens repeatedly invoked his Fifth Amendment right to remain silent.  The only substantive question Stevens answered about West concerned whether West told Stevens that he was intoxicated on alcohol and Clonazepam on the night of the incident.  Stevens stated, "He was really drunk.  I could smell liquor on him before he walked in the door.  He was pretty wasted, he was drunk."  The prosecutor clarified that he was asking Stevens if West *told* him that he was drunk on Long Island Iced Teas and Clonazepam, and Stevens replied that he was again "plead[ing] the Fifth."

At the conclusion of direct testimony, defense counsel moved to "strike all of the testimony" in which Stevens had invoked the Fifth Amendment.  The court ruled that

"[c]ertainly anything that he pled the Fifth on will be stricken and certainly the questions are not as I said evidence themselves and none of those statements are received into evidence and the jury is so instructed."

Defense counsel then proceeded to cross-examine Stevens at length. Stevens did not invoke his Fifth Amendment right against self-incrimination at any time during cross-examination. Stevens testified that he had been incarcerated for most of his adult life, that he told the grand jury that West was a friend of his, that he had violated various orders of protection, that he sold drugs for approximately ten years, that he had trouble following laws he did not agree with, that had previously pled guilty to endangering the welfare of a child, and that he had violated probation on various occasions for smoking marijuana because he had a problem with authority figures and he did not like his probation officer. Stevens testified that he had previously been convicted for the criminal sale of a controlled substance in the third degree. He claimed that if he failed to take a plea that was offered to him in that case that he would "get smashed" because the judge, district attorney, and his own attorney did not like him. That court ultimately refused to sentence him in accordance with his plea deal because he had not been honest with his probation officer about the fact that he had withdrawn from college. Stevens also testified that he pled guilty to criminal contempt in the second degree in exchange for dropping an order of protection which prevented him from seeing his daughter.

In summation, the prosecutor noted that Stevens "didn't want to be here. And he refused to confirm or deny the things he had previously told the police shortly after Pat West and he had been together in [jail]." The prosecutor continued:

> So it's only fair to [West] that you can't rely on the things I asked Robin Stevens about what he said [to the police]. You can't rely on those questions for the truth of the

matters that were contained in those statements. But unless the judge tells you otherwise, and I don't think he will, you can consider what he did acknowledge from his statement, and the fact that he did acknowledge giving a statement to Sergeant Troyer, and the fact that he did acknowledge testifying in the grand jury when this case was indicted, and you can consider how he presented himself in this courtroom, *and you can consider how he never denied making a single statement I asked him about*, *simply refused to answer*.

The prosecutor further stated that although he was "not going to vouch for Robin Stevens," the jurors "don't have to leave your common sense behind on this witness either, or forget what you saw when he testified. You can and should consider how you saw him act on the witness stand, what he did say, *what he didn't say, and what logical inferences you might want to draw from all that*."

After summation was complete and the jury had been excused, defense counsel objected to the prosecution's summation, arguing as follows:

> [The prosecutor] indicated that Robin Stevens did not deny any of the questions I posed to him with regard to the statements he made previously, he just didn't answer. I would object on the grounds it would be improper to suggest [that an] inference can be made for refusal to answer based upon the right not to incriminate yourself.

The prosecutor argued in response that he had been clear that the jury could not infer that any information in his questions were true, but that the jury had a right to consider what it observed of Stevens in the courtroom. The court overruled defense counsel's objection without comment.

As noted above, West argues that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor committed misconduct in summation by becoming an unsworn witness for the prosecution, "placing his own veracity [at] issue," and vouching for Stevens. Trial counsel did not object on those grounds, and according failed to preserve such a claim for appeal. *See People v. Giuca*, 871 N.Y.S.2d 709, 711 (N.Y. App. Div. 2009) ("The defendant's

-19-

contention that the prosecutor's misstatements of the law during summation deprived him of a

fair trial is unpreserved for appellate review since the defendant did not object to those remarks."

(citations omitted)).  Instead, trial counsel argued that the prosecutor misstated the law.

Appellate counsel's decision to argue the preserved claim on direct appeal that the prosecutor

had misstated the law and forgo the unpreserved claim that the prosecutor committed misconduct

by vouching for Stevens, assuming the role of an unsworn witness, and placing his own veracity

at issue, was a reasonable trial strategy which this Court may not second-guess.  After reviewing

closing argument as a whole, there is no evidence that the prosecutor committed misconduct in

the manner West suggests.  The prosecutor specifically stated that he was not vouching for

Stevens, and at no time asked the jury to pass on his personal integrity or ethics or asserted

statements akin to unsworn testimony.  *Cf. Floyd v. Meachum*, 907 F.2d 347, 354 (2d Cir. 1990)

(discussing the impropriety of the prosecution's request that the jury pass on her personal

integrity and professional ethics before deliberating on the evidence, thereby implying that she

personally vouched for a witness's credibility).  West has failed to demonstrate that appellate

counsel "omitted significant and obvious issues while pursuing issues that were clearly and

significantly weaker."  *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994).  On the contrary,

appellate counsel deftly chose to assert the stronger argument—that the prosecutor improperly

advised the jury that it could make inferences based on Stevens's invocation of his right to

remain silent—over the weaker argument West suggests should have been raised.  Contrary to

West's suggestion, appellate counsel does not have a duty to advance every nonfrivolous

argument that could be made.  *Jones v. Barnes,* 463 U.S. 745, 754 (1983).  Rather,

"[e]xperienced advocates since time beyond memory have emphasized the importance of

winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52; *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).  Appellate counsel was not deficient in failing to raise this claim on direct appeal, and the Appellate Division's denial of West's ineffective assistance of appellate counsel claim was therefore not unreasonable or contrary to federal law.

    d.  Appellate counsel's failure to argue harsh and excessive sentence

West next argues that appellate counsel was ineffective for failing to argue on direct appeal that his sentence was harsh and excessive.  West raised this claim in his coram nobis petition.  The Appellate Division unanimously denied West relief without comment, and the Court of Appeals denied leave to appeal.

In New York, first-degree manslaughter is a class B felony offense for which a defendant may be sentenced from 5 to 25 years' imprisonment along with 2 ½ to 5 years of post-release supervision.  N.Y. PENAL LAW §§ 125.20(1), 70.02(1)(a), 70.02(3)(a), 70.45(2)(f).  It is undisputed that West's sentence of 21 years' imprisonment followed by 5 years' post-release supervision was within that statutory range.  The Appellate Division is authorized to reduce sentences which, although legal, are "unduly harsh or severe," CPL § 470.15(6)(b); however, "[w]here a sentence is within permissible statutory ranges, it will not be disturbed unless the sentencing court abused its discretion or extraordinary circumstances exist warranting modification."  *People v. Mitchell,* 734 N.Y.S.2d 353, 358 (N.Y. App. Div. 2001) (citation omitted).

According to the pre-sentence investigation report, although this was West's first experience with the penal system, he had previously been involved in similar violent episodes. In April 2008, West punched a man in the face in a parking lot and later claimed that that victim and his brother had "jumped" him for no apparent reason. One month later, in the same parking lot, West punched another man two or three times until the man was unconscious and suffered numerous facial fractures. West again claimed he was acting in self-defense, and told the police, "It's not my fault I hit harder than they do." The pre-sentence investigation report also recounted that West told Stevens while they were briefly in jail together that on the night of the incident he was intoxicated and high on prescription drugs when he punched Adams and then stomped the "shit out of his head" after Adams fell to the ground. He also reportedly told Stevens that he would not be in jail if not for his wife, because she had left him and he was "really pissed off" when he encountered Adams. According to the report, Sergeant Troyer stated that West "took no responsibility and showed no remorse," and that his statements about his prior physical altercations were consistent with each other "almost word for word, that it was self-defense." The report stated that West said, "Well the guy ran into me, what was I supposed to do?" The report noted that West failed to show remorse and responsibility for his actions, and concluded:

> It appears that the only person who could have predicted this type of behavior was [West] himself. He was aware that he has a quick temper and that when he drinks he is more likely to engage in physical altercations, as evidenced by his past history. He is also aware of his physical strength as evidenced by a former statement made to the police that, "It's not my fault that I hit harder than they do." Previous to this matter [West] had struck another individual hard enough to render him unconscious and require treatment at University Hospital. [West] did nothing to seek help for his aggressive behavior making it inevitable that he would eventually cause serious lasting physical injury or death.
>
> Under these circumstances, [West's] potential for law abiding behavior is extremely poor. For the protection of the community he needs to be removed from

society.  It is hoped that as he matures he will recognize that he does have aggression issues as well as drug and alcohol issues and will seek treatment for same.

After reviewing the pre-sentence investigation report and hearing impact statements as well as argument of counsel, the court characterized the incident as a "random act of brutality" by West who "barely [k]new his victim" and "certainly had no motive to attack him in this vicious way."  The court considered the mitigating factors argued by defense counsel, including West's relative youth and his lack of a prior criminal record, and weighed them against the "substantial" aggravating factors, including "[t]he savage nature of the attack itself," West's "lack of regard for his victim . . . at any stage of this matter, including leaving him behind in the snow after the attack simply to be found by others," "the evidence . . . of similar acts of violence," and the fact that "moments after his crime against Mr. Adams, [West] was involved in another fight."  The court was "particularly concerned about the lack of remorse" West showed at any stage.  "Balancing these factors," the court ultimately concluded that "a severe sentence is required . . . by such a senseless act of violence."

The Appellate Division's denial of West's ineffective assistance of appellate counsel claim was not unreasonable or contrary to federal law.  Although appellate counsel could conceivably have argued that West's sentence was harsh and excessive,  it is not likely that counsel would have succeeded, and as discussed *supra*, appellate counsel need not raise every non-frivolous argument.  *Jones,* 463 U.S. at 751-52, 754; *Aparicio*, 269 F.3d at 99.  There is no evidence that extraordinary circumstances warranted modification of his sentence; rather, the record supports the imposition of a lengthy sentence given West's history of violence, his awareness of his short temper and physical strength, the lack of motive and the brutality of the act, and West's lack of regard for the victim or remorse for what occurred.  In addition, the

sentencing court carefully weighed both aggravating and mitigating factors, and it is not likely that the Appellate Division would have found that it abused its discretion in balancing those factors. Given the court's deliberation over the sentence and the support in the record for a lengthy sentence, any argument by counsel that the Appellate Division should reduce the sentence as harsh and severe would have likely have been fruitless, and counsel is not deficient for focusing on the stronger arguments on appeal. *Mayo*, 13 F.3d at 533; *Jones,* 463 U.S. at 751-52. Therefore, the denial of West's ineffective assistance of appellate counsel claim was not unreasonable or contrary to federal law.

e. Appellate counsel's failure to argue that the trial court erred in declaring Stevens a hostile witness

Finally, West argues that appellate counsel was ineffective for failing to argue on direct appeal that "[t]he trial court erred in allowing the [prosecution] to declare [Stevens,] its own witness, '[h]ostile,' thereby allowing cross-examination and impeachment which constituted prejudicial error and deprived [him] of his fundamental confrontation rights." As discussed *supra*, this claim is unexhausted, and in any event is completely without merit. Appellate counsel did in fact argue on direct appeal to the Appellate Division that the trial court erred in allowing the prosecution to declare Stevens hostile, "thereby allowing impeachment which constituted prejudicial error and deprived [West] of his fundamental confrontation rights," and further argued that the claim was preserved for review and was not harmless. The Appellate Division concluded that the trial court properly exercised its discretion in declaring Stevens hostile given his refusal at trial to answer any questions about the written statement he had provided to the police regarding the admissions West allegedly made to him. *West*, 925 N.Y.S.2d at 272. In applying for leave to appeal to the Court of Appeals, counsel similarly

argued that the Appellate Division erred in concluding that the trial court properly exercised its discretion in declaring Stevens a hostile witness and in finding that the People's improper impeachment of Stevens was unpreserved and harmless. The Court of Appeals denied relief without comment. *West*, 957 N.E.2d 1164, 1164. Thus, West's claim that appellate counsel was ineffective in this regard is belied by the record and rejected by this Court.

To the extent West challenges the state court's implicit ruling that treating Stevens as a hostile witness did not violate his right to confrontation, that ruling was not unreasonable or contrary to federal law. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. It is well-settled that the Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citation and internal quotation marks omitted). The Second Circuit has recognized "that in some instances a defendant's sixth amendment right to confrontation will be denied as a result of a witness' invocation of his or her fifth amendment privilege against self-incrimination." *Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir. 1991) (collecting cases). However, not every instance in which a witness invokes the privilege will give rise to a confrontation violation; rather, "the sixth amendment is violated only when assertion of the privilege undermines the defendant's opportunity to test the truth of the witness' direct testimony." *Id*.

Here, West was not precluded from undermining Stevens's direct testimony. Direct testimony which was not stricken was limited to his criminal history and the bare fact that he had

spoken to police and testified before the grand jury about the content of a conversation he had

with West while they were incarcerated together shortly after West's arrest.  Defense counsel

was able to critically attack Stevens's credibility, eliciting an explicit lack of respect for the law

as well as a detailed criminal history which rendered him incarcerated for the majority of his

adult life.  Stevens did not testify to anything of substance against West on direct, and to the

extent that the jury could infer that he had previously incriminated West, defense counsel was

able to substantially undermine any detrimental inference through cross-examination.

*Pennyslvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) (the right to cross-examination "includes the

opportunity to show that a witness is biased, or that the testimony is exaggerated or

unbelievable," and this type of evidence "can make the difference between conviction and

acquittal"); *Bagby*, 932 F.2d at 137 ("a witness' invocation of the fifth amendment will not

violate a defendant's right to confrontation *unless* the refusal precludes the defendant from

testing the truth of the witness' prior testimony" (citation and internal quotation marks omitted)).

Because Stevens's invocation of his Fifth Amendment right against self-incrimination did not

preclude defense counsel from testing the very limited nature of his direct testimony, any claim

by appellate counsel that West was precluded from confronting Stevens in violation of the Sixth

Amendment would have been futile.  *Jones,* 463 U.S. at 751-52.

## V. CONCLUSION

West is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El,* 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Second Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 8, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
